UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE UNITED STATES OF AMERICA                                    05-CR-241E

       -vs-

SEN TANG HUANG,                                                 MEMORANDUM
             Defendant.

_____

       On September 30, 1985 defendant Sen Tang Huang shot Douglas Sprague three times in the back at a Columbia, S.C. Sears store, resulting in Sprague's death.  After the shooting, Huang boarded a plane in Columbia destined for Tampa, Fla., but was arrested during a lay-over in Atlanta, Ga.  At the time of his arrest, Huang possessed a .38 caliber Smith and Wesson revolver, a ski mask, a homemade silencer for a .22 caliber weapon and the ownership papers for a .22 caliber Ruger semi-automatic pistol.  Initially, Huang denied any involvement in the shooting, but later admitted to having shot Sprague.  Huang was charged with murder and on May 15, 1986 was convicted of voluntary manslaughter and sentenced to 30 years in prison.  During his incarceration, Huang educated himself via correspondence courses, eventually receiving a Bachelor of Arts degree from Liberty University.  Huang was released from prison on January 30, 2000 and was thereafter deported from the United States on February 3, 2000.

As is customary, prior to his deportation, Huang was warned not to return to the United States and was advised of the repercussions of his unauthorized return or attempted return. The warning provided to Huang reads as follows:

> "In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States: [a]t any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony.
>
> "After your removal has been effected you must request and obtain permission from the Attorney General to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or office of the Immigration and Naturalization Service. Refer to the above file number when requesting forms or information.
>
> **"WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000."**

Warning to Alien Ordered Removed or Deported.

Subsequent to his deportation, Huang settled in Taiwan, was married, purchased a home and started his own company. It appears that he led a lawful and productive life in Taiwan. Approximately in 2002, Huang began a business

relationship with Richard Kanter and his company, Dr. Comfort. Kanter had designed a shoe appropriate for wear by diabetic patients and Huang contracted with factories in Taiwan to assemble the shoes for Dr. Comfort. As the business relationship strengthened, Kanter often visited Huang in Taiwan, developing a personal relationship with Huang and his wife and Huang became Kanter's employee. Kanter also began to request that Huang visit the Dr. Comfort operations in the United States.

Huang never disclosed to Kanter or anyone else at Dr. Comfort his prior conviction and deportation from the United States or his inability to enter the United States without prior permission from the Attorney General. Instead, Huang routinely rebuffed the invitations to visit the United States. However, as the frequency and pressure of Kanter's requests increased, Huang agreed to visit the United States for three days.

In February 2005, Huang flew from his home in Taiwan to Canada, paid approximately $20,000 to obtain a fraudulent Canadian passport in the name of Kang Keung Wong and then attempted to enter the United States using that fraudulent passport at the Rainbow Bridge Port of Entry. Upon questioning by Border Protection Officers, Huang admitted his true identity and that he had previously been deported from the United States. He was arrested and charged with attempting to reenter the United States by using false information and

impersonating another, in violation of 8 U.S.C. §1326(a) and 18 U.S.C. §§1001(a)(3) and 1546(a).

On September 16, 2005 Huang pled guilty to a one-count information charging him with illegal reentry into the United States, in violation of 8 U.S.C. §1326(a) and (b).  In consideration for his plea of guilty, the government agreed to seek the additional one-level downward adjustment for acceptance of responsibility, which, if granted would result in a total reduction of three offense levels for such acceptance.  The government also agreed, in recognition of Huang's cooperation, to move for a six-level downward departure at the time of sentencing pursuant to United States Sentencing Guideline ("Guideline") 5K1.1.  In anticipation of the government's motions, Huang sought a sentencing hearing in order to present additional evidence in support of his request for lenient sentencing.  The hearing was conducted on December 21, 2005 and the Court heard testimony from Richard Kanter.

Kanter testified about the history of his relationship with Huang.  He stated that he considered Huang to be very trustworthy and hardworking.  Kanter also testified that he had been unaware of Huang's prior conviction and deportation and that, had he known, he would not have pressured Huang to come to the United States.  Kanter expressed sincere remorse for his involvement in Huang's attempt to enter the United States.

The Court fully credits the testimony of Kanter and believes that he would not have asked Huang to come to the United States had he known of Huang's conviction and deportation. Kanter's requests, however, are not the reasons for Huang's current circumstances. Huang was fully aware that he was prohibited from entering or attempting to enter the United States without the express permission of the Attorney General. It was Huang's own decision to risk his freedom by attempting an unauthorized return to the United States.

The Court is not unsympathetic to Huang. It appears that he has worked very hard to make a success of his life and that continued success — and pressure from Kanter — motivated his attempt to reenter the United States. It also appears that he suffers from several medical ailments which are exacerbated by his incarceration. The Court cannot excuse, however, Huang's resort to illegal means to reenter the United States particularly in light of the legal alternatives open to him.

Huang could have simply told Kanter that he was not allowed to return to the United States. While undoubtedly a shameful and painful conversation to have had, it would have avoided the current situation. Certainly now Huang would agree that the risk of damaging his business relationship does not compare to the pain of the loss of his freedom and his separation from his family. Huang had a second alternative in that he could have sought permission from the Attorney General or the Secretary of Homeland Security to reapply for admission

to the United States.  While the Court will not speculate as to whether such permission could have or would have been granted, there is no evidence whatsoever that Huang even considered this lawful means of reentering the United States.  Instead, Huang chose to resort to illegal activity, expending a considerable sum to fly to Canada, procure a fraudulent passport and attempt to enter the United States under false pretenses.  The Court cannot condone such conduct.

Under the Guidelines, Huang's base offense level is 8, plus an additional 16 levels pursuant to Guideline 2L1.2(b)(1)(A) because of his prior conviction for a crime of violence.  With a three-level reduction for acceptance of responsibility, Huang's total offense level is 21.  Huang's criminal history category is II.  Accordingly under the Guidelines, Huang's range of imprisonment is 41 to 51 months. The government agreed to move at sentencing for a six-level downward departure pursuant to Guideline 5K1.1 in recognition of Huang's substantial cooperation.  The government filed its motion on January 5, 2006 and the Court will grant the downward departure.  Huang's total offense level is reduced to 15 and results in a range of imprisonment of 21 to 27 months.  Huang asks the Court to impose a sentence of time served and to grant him voluntary departure from the United States.

Huang's requests will be denied.  Considering the application of the Guidelines as well as the factors listed in 18 U.S.C. §3553(a), the Court concludes

that an additional period of incarceration is warranted as a deterrent to Huang and others similarly contemplating an unauthorized return to the United States. Here, Huang has already received significant benefit as a result of the government's anticipated 5K1.1 motion and the Court cannot grant any additional leniency. For those reasons, the Court concludes that a sentence of 21 months incarceration is appropriate and will sentence Huang accordingly.[1]

DATED:   Buffalo, N.Y.

January 6, 2006

                                                */s/ John T. Elfvin*
                                                JOHN T. ELFVIN
                                                   S.U.S.D.J.

---

[1] A sentence of 21 months is within the Guidelines range as calculated by the Court. However, even if the Court's calculation could be found erroneous, the Court considers such a sentence to be reasonable and would impose the same sentence as a non-Guidelines sentence. *See United States* v. *Selioutsky*, 409 F.3d 114, 188 n.7 (2d Cir. 2005).